**BANK OF LEXINGTON, Plaintiff,**

v.

**JACK ADAMS AIRCRAFT SALES, INC., Defendant.**

**No. DC 75–26–S.**

United States District Court,
N. D. Mississippi,
Delta Division.

April 23, 1976.

18

Charles L. Sullivan, Sullivan, Smith & Hunt, Clarksdale, Miss., for plaintiff.

Semmes Luckett, Roberson, Luckett & Roberson, Clarksdale, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The central issue in this case for the court to determine is which of two innocent parties will find itself $18,000 poorer on account of a third party's default on a contractual obligation.

On December 26, 1972, the defendant, Jack Adams Aircraft Sales, Inc., (hereinafter "Adams") and Buckeye Air Service, Inc., (hereinafter "Buckeye") entered into

an agreement whereby Adams would sell Buckeye five Douglas C–47 aircraft for $175,000. Upon receipt of Buckeye's $17,500 downpayment, Adams caused the aircraft to be delivered to Buckeye. Adams later mailed to Buckeye an invoice covering the sale of the aircraft and a bill of sale on each of the planes. The bills of sale were delivered to Buckeye upon the express understanding that they would not be filed with the Federal Aviation Administration until the balance of the purchase price, $157,500, was paid.

Buckeye was unable to make any further payments in reduction of the purchase price and, on April 30, 1973, Adams demanded the return of the bills of sale covering the aircraft. Subsequently, on May 16, 1973, Buckeye and Adams arrived at a new agreement whereby Buckeye would purchase only one of the five aircraft and would allow Adams to repossess the remaining planes on May 17.

The terms of the sale of the one plane were that the bill of sale on the aircraft would not be filed with the Federal Aviation Administration; that the $17,500 downpayment would be forfeited; that an additional payment of $10,000 would be made on May 21, 1973; and that a final payment to Adams of $32,000 would be made no later than June 20, 1973.

In violation of the terms of the modified agreement, Buckeye made no further payments to Adams after May 16, and, on June 29, the aircraft was returned to the defendant. Adams later sold the plane at auction and retained the proceeds in satisfaction of Buckeye's obligations under the modified sales agreement.

While these transactions were occurring between Adams and Buckeye, Buckeye was also dealing with the plaintiff, the Bank of Lexington (hereinafter "the bank"). On December 19, 1972, the bank lent Buckeye $18,000 on the basis of an unsecured promissory note payable 90 days after execution. Although the record reflects that the $17,500 downpayment mentioned above was made on December 26, 1972, it is silent as to whether the downpayment came from the proceeds of the December 19th loan to Buckeye by the bank.

On May 16, 1973, the date upon which the Adams/Buckeye sales agreement was modified to include only one aircraft, Buckeye granted a security interest in the aircraft to the bank on the basis of the pre-existing $18,000 loan. Buckeye then, on May 22, 1973, in contravention of the terms of its understanding with Adams, permitted the bill of sale and the security agreement on the remaining aircraft to be filed with the Federal Aviation Administration.

Having received none of the proceeds from the sale of the aircraft, the bank instituted the instant action claiming the security agreement executed by Buckeye on May 16, 1973 entitles it to priority over Adams to the extent of Buckeye's $18,000 obligation to the bank. On October 6, 1975, the plaintiff moved the court for summary judgment and, following extensive briefing of the issues by counsel, the court entertained oral argument on the motion.

While the court feels disposition of the case pursuant to Fed.R.Civ.P. 56 is now proper, there is perhaps one issue which warrants discussion before proceeding to the merits of the motion for summary judgment. Although the plaintiff has moved for summary judgment, no like motion has been filed on behalf of the defendant. The question then arises as to whether, should the court be so inclined, summary judgment may be granted for the defendant, a non-moving party.

Professors Wright and Miller have addressed this point of law in two separate procedural contexts. First, these respected authorities state unequivocally that summary judgment for a nonmoving party "clearly is proper if both sides agree that there are no material fact issues and join in the request that the case be decided for the moving or nonmoving side, on the basis of a motion for judgment made by only one of them." Wright & Miller, Federal Practice and Procedure § 2720 at 467. It is the recollection of the court that the parties here reached just such an agreement at the conclusion of the hearing in this action held

March 4, 1976; however, should the court's memory on the point be less than perfect, Professors Wright and Miller furnish further guidance.

█ Despite the absence of an agreement between or among the parties that the case may be decided by summary judgment, "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56". Id. at 467–68. Accordingly, the court perceives no barrier to summary judgment for the defendant in the instant case, should the present record warrant such disposition.

Plaintiff's claim in this case is clearly predicated upon the security agreement executed by Buckeye on May 16, 1973. By virtue of this transaction, the bank claims that, as to the one aircraft presently in issue, it is entitled to status as a "bona fide encumbrancer for value without notice."

█ In their briefs submitted to the court, and at oral argument, the parties addressed the question of the bank's status as a bona fide encumbrancer in the context of the law of the State of Mississippi. The court too initially assumed the law of this jurisdiction to control the question of priorities here; however, the court is now of the opinion that the law to be applied concerning the validity of the security agreement here is that of the State of Kentucky.

Buckeye Air Service was domiciled in Ohio; however, the aircraft in question was stationed at and operated from Bluegrass Field in Lexington, Kentucky. The security agreement on the aircraft was executed in Fayette County, Kentucky on May 16, 1973. At that time, the aircraft in question was stationed if not physically present, in Lexington. The Bank of Lexington is, of course, a domiciliary corporation of the State of Kentucky.

█ The governing choice of law rule in this case may be stated thusly:

The validity and effect of a chattel mortgage are generally determined by the law of the place where the contract is made, if the property is located there at the time of the execution of a mortgage, despite contacts with other jurisdictions. . . . 15 Am.Jur.2d Chattel Mortgages § 716 at 211.

█ While it is therefore clear that the law of the State of Kentucky governs the validity of the security agreement upon which plaintiff's claim is here based, the court has been unable to ascertain precisely the substantive law of that jurisdiction on this point. However, it is apparently the law that "a chattel mortgage given to secure a preexisting debt without other consideration does not take priority over a prior lien even though the subsequent mortgagee has no notice of the prior lien." 15 Am. Jur.2d Chattel Mortgages § 165 at 334.

Accordingly, plaintiff's claim must fail unless it is able to demonstrate that "other consideration" flowed from the bank to Buckeye at the time of the execution of the security agreement. An Affidavit filed by an officer of the bank in support of their motion for summary judgment contains the following statement:

In consideration of plaintiff's, Bank of Lexington's forbearance to file a civil action to collect the aforesaid note and further for the agreement by the plaintiff, Bank of Lexington, to extend time for payment of same on or about May 16, 1973, Buckeye Air Service, Inc., executed a security agreement to secure the aforementioned promissory note . . . ."

It thus appears that there was additional consideration in connection with the security agreement transaction in the form of the bank's forbearance to collect Buckeye's note then due. The question then becomes whether the forbearance constitutes sufficient consideration to support the agreement. The law on this subject has been stated in the following language:

As a rule, an extension of time for the performance of a contract for the payment of a debt constitutes a sufficient consideration for a contract. *For an extension of time to pay to be consideration, however, it should be for a definite time.* 17 Am.Jur.2d Contracts, § 114 at 459–60. [Emphasis added]

A second treatise, Corpus Juris Secundum, states the same rule thusly:

> While in some jurisdictions it has been held that an agreement to forbear must specify a definite time for forbearance, generally it is no objection to the validity of the agreement that there was no particular time specified as the period for forbearance since the law presumes that it was to be for a reasonable time. 17 C.J.S. Contracts § 103 at 820.

While Corpus Juris Secundum would accordingly divide the various jurisdictions into majority and minority rules as American Jurisprudence Second does not, it is interesting to note that Corpus Juris Secundum cites three cases in support of what it designates as the minority position (that there must be a definite time of forbearance specified) and only two cases in support of what it terms to be the majority position (that a reasonable time for forbearance will be presumed). Further, the footnote in Corpus Juris Secundum concerning the minority rule contains a statement which the court feels is very pertinent here. "Forbearance to sue, to constitute legal consideration, must be such as will tie a creditor's hands for a definite time established between parties." *Id.* citing *Ballentine Motors of Georgia, Inc. v. Nimmons,* 92 S.E.2d 714, 93 Ga.App. 708.

The position here taken by the court as to the validity of the chattel mortgage in this case also finds support in the law concerning mortgages on real property. In an annotation entitled "Extension of time or forbearance to sue as consideration constituting mortgagee bona fide purchaser," the author makes the following statement:

> A number of courts, in applying the rule by which an extension of the time for payment of a pre-existing debt is held to be sufficient consideration to make one in whose favor is executed a bona fide purchaser, have added to the rule the requirement that the extension be for a definite period of time. 39 A.L.R.2d 1088, 1094.

Cases from Alabama, Arkansas, Florida, New York, Oklahoma and South Dakota are thereinafter cited to support the rule as stated. While these decisions involve mortgages on real property, the court can discern no substantial reason why the law would differentiate chattel mortgages and realty mortgages insofar as this particular point is concerned. The case of *Gabel v. Drewrys, Ltd.,* 68 So.2d 372 (Fla.1953) is, but for the nature of the mortgaged property, precisely in point.

By way of summary, the court holds that, although the law of the State of Kentucky cannot be ascertained, the prevailing rule of law would reject the bank's claim of priority as founded upon the security agreement executed by Buckeye on May 16, 1973 since the record in the case clearly indicates that, in addition to Buckeye's pre-existing debt, the only consideration which flowed to Buckeye consisted of the bank's agreement to forbear collection of the note for an indefinite period. The bank, being therefore entitled to forbear for as long or as short a period as it may see fit, did not "have its hands tied" in regard to Buckeye's indebtedness. Furthermore, Buckeye received no benefits pursuant to the bank's agreement to forbear which it did not already enjoy insomuch as the bank remained at liberty to demand payment of Buckeye's note at any time whatsoever. Plaintiff's security agreement of May 16, 1976 being unenforceable for lack of consideration and defendant's lien on the subject aircraft having been duly executed upon by repossession and sale at auction, the court then holds that the defendant here is entitled to priority over the plaintiff as to the proceeds of that sale.

An order will be entered accordingly.