**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**SUNSHINE AND LEISURE, INC., d/b/a Sunshine and Leisure Rest Homes, Sandra J. O'Neal, Individually, Ray O'Neal, Individually, Anne Verbisco, Individually, Defendants.**

**No. 79–22–Civ–Oc.**

United States District Court,
M. D. Florida,
Ocala Division.

May 6, 1980.

Bobbye D. Spears, Regional Sol., Ellen Hollander, Atty., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Phil Trovillo, Ocala, Fla., for defendants.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This is an action brought by the Secretary of Labor seeking enforcement of the wage and hour provisions of the Fair Labor Standards Act of 1938, as amended (the Act). The case came on for pretrial hearing, but because the Court's calendar would not permit the trial to commence for several months, the pretrial conference was continued. The hearing, however, was used as the forum for oral argument on several motions and counsel for both sides agreed that other pending motions could be ruled upon without oral presentation. It is to these motions that this opinion is addressed.

The Court's attention is drawn first to plaintiff's motion for an order permitting late filing of answers to defendants' requests for admissions. This motion by plaintiff was filed in response to the motion

for summary judgment filed by defendants. In that motion, defendants contend that because plaintiff has not answered or otherwise responded to the request for admissions, the factual assertions contained therein should be deemed admitted pursuant to Fed.R.Civ.P. 36(a). While defendants' statement of the rule is correct, the Court feels that its application in the present case would be too harsh a penalty to impose on plaintiff. Along about the time the requests for admissions were filed, a procedural motion war was raging between the parties. The neglect or inadvertence of plaintiff's counsel in failing to notice and respond to the request for admission, though not condoned, is certainly understandable. Counsel for defendants never made inquiry of plaintiff with regard to a response to the requests, although numerous conversations between counsel were had. Additionally, it would violate the Court's sense of equity and fairness to allow defendants' case to stand on such a procedural ambush when defendants' case would not have been heard at all had it not been for the Court's vacation of the default entered against them originally. Accordingly, the Court granted plaintiff's motion and will enter an order permitting plaintiffs to respond to defendants' request for admissions.

Although allowing plaintiff to respond to the request for admissions substantially undermines the undisputed factual basis claimed by defendants in support of their motion for summary judgment, it is not for this reason alone that the motion will be denied. As will be discussed below, the Court is of the opinion that the material of record conclusively demonstrates that defendants' employees are covered under the wage and hour provisions of the Act.

Defendants own and operate rest homes, each licensed under Florida law as an Adult Congregate Living Facility (ACLF). This terminology is a creature of the state statutory scheme governing nursing homes and related health care facilities. *See* Fla.Stat. § 400 *et seq.* Therein, an ACLF is defined to be:

any institution, building or buildings, residence, private home, boarding home, home for the aged, or other place, whether operated for profit or not, which undertakes through its ownership or management to provide, for a period exceeding 24 hours, one or more personal services for four or more adults, not related to the owner or administrator by blood or marriage, who require such services.

Fla.Stat. § 400.402(4).

Personal services are:

services in addition to housing and food service which include, but are not limited to: personal assistance with bathing, dressing, ambulation, housekeeping, supervision, emotional security, and any other related service which the department may define. Personal service does not include medical services.

Fla.Stat. § 400.402(7).

By several documents defendants admit to providing these and other services to the residents of their establishments. In the affidavit of Sandra J. O'Neal, filed in support of defendants' motion for summary judgment, it is disclosed that employees assist the residents with walking and bathing; that employees wash and launder the residents' clothing and bed linens, that employees provide transportation for and assistance to the residents in making and keeping doctor's and beauty parlor appointments; and that employees are available around-the-clock to assist residents with such personal needs as getting a glass of milk in the middle of the night or attending to a coughing spell. Defendants' responses to plaintiff's first set of interrogatories show, in addition, that defendants' employees shave residents, give haircuts and provide such personal services as food preparation, maid service, housecleaning, and assistance with personal hygiene. Finally, the unopposed affidavit of plaintiff's representative, Ms. Joan Prado, filed August 23, 1979, discloses that all of the residents of defendants' homes appear to be "elderly and/or physically debilitated." Defendants' list of purported reasons for residents choosing to reside at one of their homes bears out the

validity of Ms. Prado's observations in that most reasons given are generally associated with the elderly.

The maintenance and operation of defendants' homes require the use of many products and goods. The affidavit of Sandra J. O'Neal, filed April 15, 1980, discloses that soap powder, bleach, fabric softener, and all types of food are purchased and used or prepared by defendants' employees. Furthermore, by the same affidavit, defendants admit to the purchase of furnishings and appliances for use by the residents of the homes. In addition, it is appropriate for the Court to take judicial notice of the fact that other products and goods would have to be purchased in order to perform the many services defendants admit to providing for the residents.

Under the Fair Labor Standards Act, "an enterprise engaged in commerce or in the production of goods for commerce" means:

an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which–

\* \* \* \* \* \*

(5) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a pre–school, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit).

29 U.S.C. § 203(s). An "enterprise" is defined as:

the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . .. For purposes of this subsection, the activities performed by any person or persons–

(1) in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a pre–school, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit) . . . shall be deemed to be activities performed for a business purpose.

29 U.S.C. § 203(r).

■ These definitions determine the bounds of the Act's coverage and are to be read liberally so that the intent of the Act will be furthered. *Dunlop v. Ashy*, 555 F.2d 1228, 1234 (5th Cir. 1977); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1300 (5th Cir. 1969). The legislative history of the 1966 amendments indicates Congress intended to extend the coverage of the Act to include employees of hospitals and related institutions, nursing homes, and homes for the aged. S.R.No.1487, 89th Cong., 2nd Sess., *U.S.Code Cong. & Admin.News* 3006, 3015 (1966).

■ Defendants argue against their inclusion within the definitions of § 203, claiming that their rest homes are not "institutions"; that their rest homes are not "primarily engaged in the care of the aged"; and that their designation under Florida law as ACLF's somehow withdraws them from the Act's coverage. However, from the facts adduced from defendants' own admissions, it becomes clear that these assertions are untenable.

The personal services provided the residents of defendants' rest homes can be described as nothing other than care. The residents do not just receive meals and a place to sleep. Defendants' employees are available 24 hours a day to assist the residents in their most personal needs. That some of the residents may not need or request all of the services provided by defendants' employees does not affect the characterization of the services defendants make

available to their residents. The employees can truly be termed their "residents' keepers."

In addition, the services provided the residents constitute care for the aged. Although defendants would suggest there is no age restrictions placed on residents of their rest homes, they do not deny that all residents of their homes are elderly. It is not mere coincidence that the reasons given by the residents of defendants' rest homes for choosing to reside there rise out of the frailties common to persons reaching an advanced age. The requirement that defendants' rest homes be licensed under the same authority that governs nursing homes demonstrates that defendants' facilities are intended to house elderly persons. Furthermore, the charter of the corporate defendant states that "housing the elderly" is to be the general purpose of the corporation.

█ Although defendants claim that their rest homes are primarily boarding houses and not primarily engaged in the care of the sick, the aged, the mentally ill or defective, the term "primarily" as used in the statute, does not mean solely. It means principally, essentially, or fundamentally. *Brennan v. Harrison County, Mississippi*, 505 F.2d 901, 903 (5th Cir. 1975). In light of the nature of the services provided to defendants' residents, as well as the age of the residents, defendants claim that the rest homes are boarding houses cannot be accepted. A mere boarding house would not provide such additional personal services as defendants' rest homes do and someone in need of personal care would not look to an ordinary boarding house to live. Moreover, the inclusion of ACLF's in the statutory framework of "nursing homes and related health care facilities" indicates the primary function and status of defendants' homes. *See* Fla.Stat. § 400 *et seq.*

Defendants' contention that their rest homes are not institutions, as that term is used in the statute, is utter nonsense. If the Court were to read the term as narrowly as defendants suggest, the Act would have an extremely limited application. Such was obviously not the intent of the Congress. *See Dunlop v. Ashy*, 555 F.2d at 1234.

Defendants' arguments notwithstanding, the Court finds that defendants' rest homes are primarily engaged in the care of the aged. This determination provides the foundation upon which a finding that defendants' operations constitute an "enterprise" and an "enterprise engaged in commerce or in the production of goods for commerce" is based. Although defendants disclaim any related activities for a common business purpose, their conclusory denial does not rise to the necessary level of persuasion. By their own documents and admissions it is clear that defendants are involved in a common, related venture. The corporation's Articles of Incorporation provide that the corporation shall be managed by its shareholders and that it is in the business of creating, maintaining, and supporting homes for the elderly. The affidavit of Sandra J. O'Neal discloses that each of the individual defendants has acted in the capacity of director, shareholder, employee and agent of the corporation. *See Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1366 (5th Cir. 1973). Each rest home run by defendants is licensed by Florida's Department of Health and Rehabilitative Services. The licenses are issued to Sunshine and Leisure Manors No. 1 through 4.

That the operation of defendants' rest homes constitutes related activities performed through unified operation or common control is indisputable. This, coupled with the common business purpose exhibited by the operation of an institution primarily engaged in the care of the aged, in turn, constitutes an "enterprise" as that term is defined in § 203(r).

█ It has been demonstrated that numerous products and goods are purchased and used by defendants' employees in their work at defendants' rest homes. That these items have moved in interstate commerce cannot be doubted. In addition to food items which are not grown or produced locally, the employees use and handle products that have not been produced or manu-

factured within the state to clean and maintain the rest homes. The handling of these items by the employees in the regular course of defendants' business satisfies the required connection with interstate commerce. *Brennan v. State of Iowa*, 494 F.2d 100, 102–3 (8th Cir. 1974); *Brennan v. Dillion*, 483 F.2d 1334, 1336–37 (10th Cir. 1973). Defendants' argument that the contacts with interstate commerce are too small to support jurisdiction has been repeatedly rejected by the courts and therefore it is not persuasive here. *Marshall v. Victoria Transportation Company, Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979). This determination that defendants' employees are engaged in handling goods or materials that have been moved in or produced for interstate commerce, along with the finding that defendants operate an institution primarily engaged in the care of the aged, supports the conclusion that defendants' rest homes constitute an "enterprise engaged in commerce or in the production of goods for commerce."

█ These findings with regard to the definitions contained in §§ 203(r) and (s) place defendants within the wage and hour provisions of the Act and thus subject them to the requirements of § 206 (minimum wage), § 207 (maximum hours), and § 211 (record keeping requirements). Consequently, defendants' motion for summary judgment must be denied.

█ On the other hand, as the Court's discussion indicates, plaintiff is entitled to a ruling in his favor on the issue of the Act's coverage. Although plaintiff has not filed a motion for summary judgment, the Court is not precluded from entering such a ruling. Despite the absence of an agreement between the parties that a case may be decided by summary judgment, "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross–motion under Rule 56." *Bank of Lexington v. Jack Adams Aircraft Sales*, 416 F.Supp. 17, 20 (N.D.Miss.1976), *rev'd on other grounds*, 570 F.2d 1220 (5th Cir. 1978), *quoting* Wright & Miller, Federal Practice

and Procedure § 2720 at 467–68. Accordingly, based on the affidavits, answers to interrogatories, and other documents in the record, the Court holds that defendants are covered by the Act and will enter a partial summary judgment in favor of plaintiff on this issue.

The only remaining matter to be addressed is defendants' motion to compel discovery, filed April 11, 1980. In that motion, defendants seek responses to certain interrogatories which plaintiff has refused to answer. Plaintiff has responded to defendants' motion to compel claiming that the answers sought by defendants are privileged and thus protected from discovery under Fed.R.Civ.P. 26(b)(1).

The interrogatories in question seek to uncover the names of the individuals plaintiff has interviewed in developing his case and to determine the names of any persons giving sworn statements to plaintiff. Plaintiff has provided to defendants the names and addresses of all persons who have knowledge of the facts of the case, but asserts the "informer's privilege" with regard to the specific interrogatories seeking names and the actual statements of those who provided information to plaintiff.

█ Upon the authority of *Hodgson v. Charles Marton Inspectors of Petroleum, Inc.*, 459 F.2d 303, 305 (5th Cir. 1972) and *Wirtz v. Continental Finance and Loan Co.*, 326 F.2d 561, 563 (5th Cir. 1964), the Court holds that plaintiff need not disclose to defendants the names or the statements of persons who are interviewed by plaintiff or his agents. Thus, plaintiff's assertion of the "informer's privilege" is correct and defendants' motion to compel discovery will be denied.