William E. BROCK, Secretary, United States Department of Labor, Plaintiff–Appellee,

v.

Farouk HAMAD, Defendant–Appellant. (Two Cases)

Nos. 88–3911, 88–3946.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1988.

Decided Feb. 8, 1989.

Charles Diederich Heidgerd (Debank, McDaniel, Heidgerd, Holbrook & Anderson, Raleigh, N.C., on brief), for defendant-appellant.

William James Stone (George R. Salem, Solicitor of Labor, Monica Gallagher, Associate Solicitor, Linda Jan S. Pack, Washington, D.C., counsel for Appellate Litigation, U.S. Dept. of Labor on brief), for plaintiff-appellee.

Before RUSSELL, HALL and WILKINSON, Circuit Judges.

PER CURIAM:

The Secretary of Labor (the "Government") brought this action pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act ("FLSA" or "Act"),[1] 29 U.S.C. §§ 216(c) and 217, to enjoin the defendant Farouk Hamad ("Hamad" or "defendant") from violating the minimum wage,[2] overtime,[3] and recordkeeping[4] provisions of the Act and to prevent him from withholding unpaid minimum wage and overtime compensation owed his employees. The district court found Hamad in violation of the minimum wage, overtime, and recordkeeping provisions of the FLSA and ordered him to pay back wages and liquidated damages to his employees, and permanently enjoined him from violating the FLSA's minimum wage, overtime, and recordkeeping provisions. Hamad appealed, claiming he was not subject to the FLSA. We affirm.

I.

Between July 1, 1983 and August 31, 1985, Hamad managed and controlled various rental properties in the Rocky Mount, North Carolina area, designated as Hamad Realty. Some of these properties consisted of a number of single family homes, owned by Hamad and members of his family, and

1. 29 U.S.C. § 201 *et seq.* (1982).

2. 29 U.S.C. §§ 206 and 215(a)(2).

3. 29 U.S.C. §§ 207 and 215(a)(2).

4. 29 U.S.C. §§ 211(c) and 215(a)(2).

the Greenfield Apartment complex comprised of 115 two-bedroom suites, apparently owned by Hamad and his wife. All of these properties were managed and operated out of an office under the control of Hamad with the assistance of a number of employees. At the office the rents were collected and maintenance and repair work were managed. All the gross rentals were included in the income tax returns for the years in question filed by Hamad jointly with his wife. This income varied for the three years between $308,000 and $261,000. It was the contention of the Wage–Hour Division that Hamad's real estate operations represented a "single enterprise," as defined in the Act, and that its gross volume of sales met the revenue qualification and interstate commerce operations for FLSA coverage and that Hamad had failed to comply with the wage accounting, and reporting requirements of the Act.

After a two-day bench trial, the district court found that the defendant's rental operations constituted a "single enterprise," engaged in interstate commerce, with gross rentals in excess of $250,000 annually for the three years in question, and that the defendant had wilfully failed to comply with the wage, accounting, and reporting requirements of the FLSA. It accordingly awarded back wages for three years under the wilful finding, assessed in liquidated damages an amount equal to the back wages owed by the defendant, and enjoined the defendant from violating the FLSA's minimum wage, overtime, and recordkeeping provisions.

The defendant, by this appeal, charges errors in the district court's ruling that (1) his rental operation qualifies as a "single enterprise" under FLSA, (2) that he was in such rental operations engaged in interstate commerce and (3) that his rental operations met the annual revenue test of $250,000. We address seriatim the three contentions.

## II.

Under the applicable statute, a single enterprise consists of "related activities performed (either through unified opera-

tion or common control) by any person or persons for a common business purpose ... whether performed in one or more establishments or by one or more corporate or other organizational units...." 29 U.S.C. § 203(r) To summarize: The statute states that for an enterprise to be a "single enterprise" under the Act it must conduct (1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose. It is the defendant's position that Hamad Realty and Greenfield Properties were distinct units and did not qualify for coverage under the Act as a single enterprise. The district court disagreed. It found that the operations of the two properties were alike (management of residential rental units), located in the same geographic area, serviced by the same employees, and all under the control of the defendant. Under these findings, the district court concluded that the activities of the defendant qualified as a "single enterprise" subject to the coverage of the Act. This conclusion, though, based on findings of fact is one of law and reviewable by us as such. *Donovan v. Weber*, 723 F.2d 1388, 1392 (8th Cir.1984).

We have no difficulty in concluding, as did the district court, that the renting for residential purposes of the houses and apartments by the defendant clearly qualifies as "related activities" under the statute. *See, e.g., Brock v. Executive Towers, Inc.*, 796 F.2d 698, 700 (4th Cir.1986). Further, those business "activities," the Government argues, met the test for both "unified operation" and "common control" under the Act. Under FLSA regulations, the term "unified operation ... includes a business which may consist of separate segments but which is conducted or operated as a unit or as a single business for a common business purpose." 29 C.F.R. § 779.217 (1987). While it may be, as the defendant argues, that the defendant's operations do not fit easily within this definition of "unified operation," the contention, even if of merit, is unimportant to decision herein since it is clear from the defendant's own testimony that he controlled the "enterprise" and the definitive requirement is in the disjunctive, requiring only either

"unified operation" *or* "common control." The term "common control" is said to exist "where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. § 779.221 (1987). Not only did Hamad concede that he "control[led]" the activities of the enterprise but actually under his testimony, "control" by him qualified under 29 C.F.R. § 779.223 (1987), which provides that control "exists where total ownership is vested in a single person, family unit, [or] partnership." All the properties managed and controlled by the defendant were owned by the defendant, or by the defendant and his wife, or the defendant and his mother. That was sufficient by the regulations to meet the test of "control".

There remains the question whether the operations of the enterprise were for "a common business purpose." The administrative regulations issued under the Act state that "a common business purpose" includes activities which are "directed to the same business objective" or "to similar objectives" in which "the group has an interest." 29 C.F.R. § 779.213 (1987). We held in *Schultz v. Falk*, 439 F.2d 340, 346 (4th Cir.1971), *vacated on other grounds,* 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973), that when "services provided are substantially similar from project to project, and have the common purpose of maintaining and operating apartment buildings," then the common business purpose test is satisfied.[5] That decision controls here. We accordingly would conclude, as did the district court, that the defendant fully met the criteria for a single enterprise.

### III.

Second, defendant contends that the trial court committed reversible error in concluding that Hamad Realty and Greenfield Properties, as one "enterprise," engaged "in commerce" within the meaning of the FLSA. The FLSA extends to any business or businesses comprising an enterprise and having "employees engaged in commerce or in the production of goods for commerce, *or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."* 29 U.S.C. § 203(s) (emphasis added).

It seems clear that Hamad's enterprise has the requisite connection to interstate commerce to bring it within the purview of the statute. During discovery and at trial, Hamad stipulated that he had bought goods that had been moved in interstate commerce and that these goods had been used in the course of his employees' employment. Consequently, the district court found that Hamad's enterprise came within the coverage of the FLSA. But, at trial and on appeal, Hamad has claimed that his enterprise was the "ultimate consumer" of these goods, so that there was no contact with interstate commerce. Hamad relies on one section of the FLSA which states that "goods means goods … commodities, merchandise, or articles or subjects of commerce of any character, … but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof." 29 U.S.C. § 203(i). Hamad's argument, however, erroneously isolates Section 203(i) from the remainder of the FLSA. When Section 203(i) is read in context with Section 203(s), which covers "employees handling, selling, or otherwise working on goods or materials," it seems that defendant's argument must fail. Moreover, caselaw indicates that the FLSA was intended to cover the very activities in

---

**5.** In *Falk,* the Supreme Court granted certiorari to review the judgment. The first issue involved the "single enterprise" determination, which is the primary issue in this case. However, the Supreme Court had two days after grant of certiorari decided in *Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 93 S.Ct. 1138, 35 L.Ed. 2d 463 (1973) "that a fully integrated real estate management operation at several separately owned buildings was a 'single enterprise' for purposes of the Act, thus confirming the holding of the Court of Appeals on that issue in the present case." The Supreme Court thus in effect affirmed our decision in *Falk,* 414 U.S. at 194, 94 S.Ct. at 430. It then turned to the two other questions not reached by *Arnheim & Neely* and on the basis of the failure of the Secretary to establish the revenue requirement for coverage under the Act, vacated the judgment. 414 U.S. at 201, 94 S.Ct. at 433.

which defendant has engaged. *See, e.g., Marshall v. Brunner*, 668 F.2d 748, 751–52 (3d Cir.1982) (employer who used trucks, truck bodies, tires, batteries, accessories, sixty-gallon containers, shovels, brooms, oils and gas that had been manufactured out of state and had moved in interstate commerce was subject to the FLSA); *Brennan v. State of Indiana*, 517 F.2d 1179, 1181–82 (7th Cir.1975), *vacated* 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976) (state hospitals and schools that used goods including food, canned goods, books and furniture held not the ultimate consumers of these goods and thus were subject to the FLSA); *Brennan v. State of Iowa*, 494 F.2d 100, 103–04 (8th Cir.1974), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed. 2d 683 (1975) (state institutions having employees that handle goods or articles that moved in interstate commerce are subject to the FLSA because the institution is not the ultimate consumer of the goods or articles); *Brennan v. Dillion*, 483 F.2d 1334, 1336–37 (10th Cir.1973) (apartment complex owners whose employees used paint, light bulbs, soap, and other supplies held not the ultimate consumer of these goods and thus was subject to the FLSA). Hamad has argued on appeal that his business activities are "local" and thus fall outside the scope of the FLSA. But it is well established that local business activities fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce. Thus, in *Schultz v. Falk*, 439 F.2d 340 (4th Cir.1971), *vacated on other grounds*, 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973), this court held that a rental management company had sufficient contact with interstate commerce to bring it within the scope of the FLSA because "as a regular incident of their management of rental property, [its] em-

ployees ... repair plumbing, heating and air conditioning units, and substantial portions of the materials used in those activities moved across state lines." 439 F.2d at 348. In sum, Hamad's enterprise has the requisite contact with interstate commerce to bring it within the scope of the FLSA.

## IV.

The final attack Hamad makes on the district court's judgment concerns the volume of business of his enterprise. Hamad claims that the district court committed reversible error in concluding that Hamad Realty and Greenfield Properties, as one enterprise, generated in excess of $250,000 in volume. The FLSA covers any enterprise "whose annual gross volume of sales made or business done is not less than $250,000...." 29 U.S.C. § 203(s)(1). After a review of the income tax forms for 1983, 1984, and 1985, the trial court held that during those years the aggregate of rentals received by Hamad's enterprise was the correct measure of the volume of business, and that this amount exceeded $250,-000 for each of the years in question. First, the defendant argues that because Hamad Realty and Greenfield Properties are not one enterprise, the district court was incorrect in combining the rental receipts from the two businesses. As discussed above, it is clear that Hamad Realty and Greenfield Properties constitute an enterprise as that term is used in the FLSA. Thus, there is no merit to defendant's argument on this point.

In the alternative, the defendant argues that if his two businesses constitute an enterprise under the FLSA, then the aggregate rental income should be prorated among the owners [6] so that only his portion of the rentals will come under scrutiny.

---

6. Hamad argues that proration also is appropriate because he is the only defendant in this case. Yet under the FLSA, the Government may sue the "employer" who is responsible for complying with the various provisions of the Act. An "employer" is defined by the FLSA to include "any person acting directly or indirectly in the interests of an employer in relation to any employee...." 29 U.S.C. § 203(d). In this case, Hamad clearly was the employer; it is not dis-

puted that he hired and directed the employees who worked for the enterprise. Even if the businesses were within a corporate structure, Hamad would still be the employer who would be liable for violations of the FLSA. *See Donovan v. Agnew*, 712 F.2d 1509, 1511, 1514 (1st Cir.1983); *Donovan v. Sabine Irrigation Co. Inc.*, 695 F.2d 190, 194–95 (5th Cir.), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983).

This argument, too, must fail. The FLSA's dollar volume threshold focuses on the "volume of sales made or business done" by the enterprise, not on an individual's share of the profits derived from that enterprise. 29 U.S.C. § 203(s)(1). Thus, proration is not allowed. Instead, the aggregate rentals from Hamad Realty and Greenfield Properties is the proper measure of the volume of business. The district court was correct in concluding that the enterprise's volume exceeded $250,000 for each of the years in question.

The judgment of the district court is AFFIRMED.