912 F.2d 689
 29 Wage & Hour Cas. (BN 1537, 116 Lab.Cas. P 35,379
 Elizabeth H. DOLE, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
ODD FELLOWS HOME ENDOWMENT BOARD, a corporation trading as
the I.O.O.F. Home of Elkins, West Virginia, and the Board of
Directors of the Odd Fellows Home, a corporation trading and
doing business as the I.O.O.F. Home of Elkins, West
Virginia, Defendants-Appellants.
 No. 89-2455.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1990.
Decided Aug. 21, 1990.
Rehearing and Rehearing In Banc Denied Sept 17, 1990.
 
 Richard Lynn Mills (argued), Rood and Mills, L.C., Huntington, W.Va., for defendant-appellant, Board of Directors of the Odd Fellows Home.
 James Timothy Meisel (argued), Huntington, W.Va., for defendant-appellant Odd Fellows Home Endowment Bd.
 Wendy Beth Bader (argued), U.S. Dept. of Labor, Washington, D.C. (Robert P. Davis, Sol. of Labor, Monica Gallagher, Associate Sol., Linda Jan S. Pack, Counsel for Appellate Litigation, Marshall H. Harris, Regional Sol., U.S. Dept. of Labor, Washington, D.C., of counsel), for plaintiff-appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PHILLIPS, Circuit Judge:
 
 
 1
 The question is whether the Fair Labor Standards Act applies to the Independent Order of Odd Fellows Home in Elkins, West Virginia. The Secretary of Labor brought this suit against the Odd Fellows Home Endowment Board and the Board of Directors of the Odd Fellows Home seeking to enjoin appellants from violating the minimum wage, overtime, and recordkeeping requirements of the Act. The district court granted partial summary judgment in favor of the Secretary on the coverage issue and later granted the requested injunctive relief, enjoining appellants from further violations and ordering payment of back wages plus prejudgment interest. Appellants challenge the district court's ruling on the applicability of the Act. Finding no error, we affirm.
 
 
 2
 * The Grand Lodge of the Independent Order of Odd Fellows Lodge of West Virginia has owned and operated the Odd Fellows Home ("the Home") in Elkins, West Virginia, since 1910.[1] The Home cares for Odd Fellows members in good standing who are unable to earn a livelihood due to infirmities, age, or physical affliction, and are without means of support. The Home also provides care for infirm or helpless wives or widows of such members, and helpless children of members.[2] From 1980 to 1987, the Home averaged approximately 13 to 16 residents, all aged 65 years or older.
 
 
 3
 The Board of Directors of the Home ("Home Board") manages the affairs of the Home. The Odd Fellows Home Endowment Board ("Endowment Board") collects, maintains, and invests funds for disbursement to the Home Board for the maintenance and operation of the Home. The Grand Lodge controls the Home Board, electing four of the Home Board's seven members from the Lodge's membership and appointing its Grand Master and Grand Secretary to serve as ex officio members.[3] The members of the Home Board are also the members of the Endowment Board.
 
 
 4
 The Home Board employs a superintendent to manage the day-to-day affairs of the Home and a farm manager to manage the farm property owned by the Home. The Home employs personal attendants, who assist residents in taking care of their personal care needs, housekeepers, laundry attendants, cooks and dining room attendants, and maintenance workers. Most of the output from the farm is consumed at the Home; some of the surplus produced is sold. The Home also purchases products for use at the home, including food, laundry supplies, and other materials that have moved in interstate commerce.
 
 
 5
 The Secretary of Labor ("the Secretary") initially brought a civil action under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. Secs. 201-219, against the Home in 1976. The Secretary voluntarily dismissed that action without prejudice in 1978. Department of Labor personnel continued to investigate the Home to determine compliance with the FLSA. This action was filed May 25, 1984, pursuant to section 17 of the Act, id. Sec. 217, seeking to enjoin the Endowment Board and the Home Board[4] from violating the minimum wage, overtime, and recordkeeping provisions of the Act. The Secretary also sought to enjoin appellants from withholding back wages allegedly owed to the Home's employees.
 
 
 6
 Appellants moved for summary judgment; the Secretary responded and filed a cross-motion for partial summary judgment on the coverage issue. The district court referred the case to a magistrate for proposed findings of fact and a recommended disposition.[5] The magistrate concluded that appellants' operations constituted an "enterprise engaged in commerce or in the production of goods for commerce," and that the Home was "an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution." See id. Sec. 203(r), (s). The magistrate recommended that the Secretary's motion for partial summary judgment be granted; the district court, after de novo review, adopted the findings and recommendations of the magistrate.
 
 
 7
 After the parties filed proposed pretrial orders, the district court referred the case to a magistrate, designated as a special master,[6] for consideration of the back wages issue. The magistrate reaffirmed his conclusion that appellants' activities constituted an enterprise engaged in commerce within the meaning of the Act. The magistrate recommended that the court enter a permanent injunction restraining future violations of the Act and ordering payment of withheld minimum wage and overtime compensation in the amount of $177,509.60, plus prejudgment interest and costs. The district court adopted the magistrate's report, enjoining future violations of the Act and restraining the withholding of unpaid minimum wage and overtime compensation.
 
 
 8
 This appeal followed. Appellants' principal claim is that the Act is inapplicable to their activities as a matter of law. Alternatively, although they filed the initial summary judgment motion, they now claim that genuine issues of material fact on the coverage issue should preclude summary judgment. Finally, they contend that the Secretary should be estopped from attempting to enforce the Act against the Home because of the government's previous non-enforcement of the Act. We address the coverage issue first, and then the estoppel question.
 
 II
 
 9
 * The minimum wage and maximum hour provisions of the Act apply to the employees of any "enterprise" engaged in commerce or in the production of goods for commerce. 29 U.S.C. Secs. 206, 207. The Act defines "enterprise" as follows:
 
 
 10
 "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units ..., but shall not include the related activities performed for such enterprise by an independent contractor....
 
 
 11
 Id. Sec. 203(r).[7] The Act thus requires a three-part showing to bring an entity or entities within the definition of enterprise: 1) the entity or entities must engage in "related activities," 2) performed through "unified operation" or "common control," 3) for a common business purpose. See Brock v. Hamad, 867 F.2d 804, 806 (4th Cir.1989) (per curiam).
 
 
 12
 Activities are deemed "related" for purposes of the Act when they are the same or similar, such as those of individual retail stores in a chain, or when they are "auxiliary or service activities." See 29 C.F.R. Sec. 779.206(a) (1989) (quoting S.Rep. No. 145, 87th Cong., 1st Sess. 41 (1961)). Auxiliary and service activities include generally "all activities which are necessary to the operation and maintenance of the particular business," such as warehousing, bookkeeping, or advertising. Id.; see also id. Sec. 779.208 (additional activities which are "related activities"). When different business entities are involved, the critical inquiry is whether there is " 'operational interdependence in fact.' " See Donovan v. Easton Land & Dev., Inc., 723 F.2d 1549, 1551 (11th Cir.1984) (quoting Brennan v. Veterans Cleaning Serv., Inc., 482 F.2d 1362, 1367 (5th Cir.1973)). Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. See Easton Land & Dev., 723 F.2d at 1551-52 (hotel and lounge are not single enterprise where each operated separately and no substantial advantages accrued to hotel by operation of the lounge); Veterans Cleaning Serv., 482 F.2d at 1366-67 (operational interdependence and shared public image of three separate corporations involved in the "cleaning business"); Wirtz v. Savannah Bank & Trust Co., 362 F.2d 857, 860-61 (5th Cir.1966) (bank's operation of office building and leasing of space to outside tenants auxiliary to its principal business); Marshall v. Elks Club, 444 F.Supp. 957, 966 (S.D.W.Va.1977) ("symbiotic relationship" of club and lodge support finding of single enterprise).
 
 
 13
 The Secretary's regulations define "unified operation" as "combining, uniting, or organizing [related activities'] performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. Sec. 779.217 (1989). "Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." Id. Sec. 779.221. While ownership may be an important factor in determining common control, the focus of the inquiry is the performance of the related activities. Common control of performance may be established in the absence of common ownership. Id. Secs. 779.222, 779.224.
 
 
 14
 The Act itself defines as activities performed for a "business purpose" activities "in connection with the operation of ... an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution," regardless of whether such institution is operated for profit or not for profit. 29 U.S.C. Sec. 203(r)(1).[8] Homes for the care of the aged are covered by the Act, see, e.g., Marshall v. Sunshine & Leisure, Inc., 496 F.Supp. 354 (M.D.Fla.1980); homes for the care of indigents are not covered by the Act, see Brennan v. Harrison County, Mississippi, 505 F.2d 901 (5th Cir.1975).
 
 B
 
 15
 The Act applies to an "enterprise" only if "engaged in commerce or in the production of goods for commerce." The statutory definition includes an enterprise which has employees "handling, selling, or otherwise working on goods or materials that have been moved in ... commerce," and which is engaged in the operation of an institution "primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. Sec. 203(s)(5).[9] Local business activities are subject to the Act when the enterprise employs workers who handle goods or materials that have moved in interstate commerce. See Brock v. Hamad, 867 F.2d at 808.
 
 III
 
 16
 In reviewing the district court's grant of summary judgment, we apply the same standard as the trial court. See Helm v. Western Md. Ry., 838 F.2d 729, 734 (4th Cir.1988). We agree with the district court that there was no genuine issue of any material fact and the Secretary was entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). On the undisputed facts of record, the Home Board and the Endowment Board performed related activities through a unified operation and common control for a common business purpose. And the employees of the enterprise handled goods or materials that had moved in interstate commerce. The FLSA is applicable to the activities of the Home Board and the Endowment Board.
 
 
 17
 * The activities of the Home Board and the Endowment Board are related. They are mutually supportive entities that exist to operate and maintain the Home. The Home Board manages the day-to-day operations of the Home. It is dependent on the Endowment Board for a substantial part of the funds required to operate the Home. The Endowment Board exists to manage funds ultimately disbursed to the Home Board for the operation of the Home. The Endowment Board's only function is to perform auxiliary services that are essential to the continued operation of the Home Board and thus the Home. Cf. 29 C.F.R. Sec. 779.208(j) (1989) (operation of employee benefit and insurance plans is "related activity"). Though such activities might have been performed by a single entity, which itself would have been subject to the Act, division of related activities between separate entities does not preclude application of the Act to the enterprise consisting of such entities. See 29 U.S.C. Sec. 203(r).
 
 
 18
 Unified operation and common control are also clear. Both the Home Board and the Endowment Board are arms of the Grand Lodge. The two boards constitute an "organized business system" that exists to fund and maintain the Home. The very same persons serve as members of both boards. The seven persons on the boards had the requisite power to direct the performance of activities of the respective boards and ultimately the Home. Cf. Donovan v. Grim Hotel Co., 747 F.2d 966, 969-71 (5th Cir.1984) (common control of five hotel corporations established; each corporation had same board of directors and president, who exercised ultimate authority).
 
 
 19
 Appellants' common "business purpose" is the operation of an institution primarily engaged in the care of the sick or aged. Under its Rules and Regulations, the Home cares for members who become residents because they are unable to earn a living "by reason of infirmities or age." Residents are cared for in "sickness and in health." All of the residents of the Home during the relevant period were over age 65. Employees of the Home attend to the personal care needs of residents and provide cooking, cleaning, and laundry services. Residents are checked regularly, medicines are dispensed, and a physician visits the home at least once per week to see residents in need of a doctor's care. The record amply supports the magistrate's finding that the services provided by the Home to its residents are "abundantly greater than services associated with a mere boarding house." The Home is an institution primarily engaged in the care of its sick or aged residents.
 
 
 20
 Appellants' arguments to the contrary are unavailing. They claim that they are not an "enterprise" because even if their activities are related, they are performed "for" the Home, not as a part of it. See 29 C.F.R. Sec. 779.205 (1989) (activities that are related may be excluded from enterprise if performed only "for" enterprise and not as a part of it by independent contractor). The auxiliary money management services performed by the Endowment Board and the operation of the Home by the Home Board are related activities; when performed through common control and for a common business purpose the activities constitute an enterprise. Appellants' contention that unified operation or common control is lacking because there is no "for-profit" business activity or purpose is both inapposite and incorrect. Unified operation and common control is demonstrated by the identity of the boards. Further, the operation of the Home as an institution for the care of the aged meets the statutory definition of common business purpose, whether operated for profit or not.
 
 
 21
 Appellants' reliance on Brennan v. Harrison County, Mississippi, 505 F.2d 901 (5th Cir.1975), is misplaced. The Harrison County Home was a home for paupers; the Mississippi legislature made indigence, not illness or age, the indispensable prerequisite for the operation of the home. 505 F.2d at 902-04. Odd Fellows members, however, may become residents of the Home only if unable to earn a livelihood by reason of infirmities or age, and only aged members were residents during the relevant period. See Sunshine & Leisure, Inc., 496 F.Supp. at 357-58. The district court found and we agree that no genuine dispute existed respecting the ultimate fact that the Home is an institution primarily engaged in the care of the sick or aged. Congress has made the determination that such an institution may be an "enterprise" within the meaning of the Act.
 
 B
 
 22
 We also agree with the district court that there is no genuine dispute that the employees of the Home handled or otherwise worked on goods or materials that moved in interstate commerce. The Home's employees, inter alia, prepared and served food to the residents, washed the residents' laundry and cleaned the Home, and performed maintenance tasks, all the time using goods and materials that had traveled in interstate commerce. Appellants' contention that the Home was in some sense the "ultimate consumer" of the goods and materials that moved in interstate commerce does not preclude application of the Act. See Brock v. Hamad, 867 F.2d at 807-08.
 
 
 23
 The determination that the Home Board and the Endowment Board constitute an enterprise engaged in the operation of an institution primarily engaged in the care of the sick or aged, together with the determination that the Home's employees handled goods or materials that moved in interstate commerce, mandates the ultimate conclusion that the enterprise is engaged in commerce for purposes of the Act. We therefore hold that the Act's requirements apply to the Home Board and the Endowment Board.
 
 IV
 
 24
 Finally, appellants contend that the Secretary should be estopped from seeking enforcement of the Act. Apparently relying on both general equitable principles and the statutory authority in 29 U.S.C. Sec. 259 (Portal-to-Portal Act), appellants assert that the government's "protracted non-enforcement policy" is grounds for dismissing this action. In support of this contention, appellants cite a letter, sent by the Home Board to the Department of Labor in 1971 in apparent response to inquiries initiated by the Wage and Hour Division, outlining the Home Board's position that the Act should not apply to employees of the Home. In addition, appellants cite the Secretary's 1978 voluntary dismissal of the action initiated against the Home in 1976. Appellants' argument is not further articulated, but we infer that their contention is that since some time in the 1970s the government has been following a policy of non-enforcement of the Act with respect to the Home.
 
 
 25
 Appellants' contention is entirely without merit. It is "well settled that the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs., 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Though the Supreme Court has left open the possibility that in some case the government might be estopped from seeking to enforce the law against a private party, "the private party surely cannot prevail without at least demonstrating that the traditional elements of estoppel are present." Id. at 61, 104 S.Ct. at 2224. In this case, appellants have shown no detrimental reliance, let alone the reasonableness of any such reliance. To the contrary, if appellants experienced any consequence of the government's asserted policy of non-enforcement, it was the beneficial consequence of being able to retain for a time money that should have been paid to the Home's employees. See id. at 61, 104 S.Ct. at 2224.
 
 
 26
 Appellants' reliance on the good faith defense in 29 U.S.C. Sec. 259 is also unavailing. Under Sec. 259, an employer is excused from failure to comply with the requirements of the Act "if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged." 29 U.S.C. Sec. 259(a). Here, there was no written regulation, order, ruling, approval, or interpretation that could have been relied on. See Hodgson v. Royal Crown Bottling Co., 465 F.2d 473, 476 (5th Cir.1972) (voluntary dismissal by Secretary is not "administrative ruling") (per curiam). Similarly, there was no showing of the "affirmative action" required to evidence adoption of an enforcement policy. See 29 C.F.R. Sec. 790.18(h) (1989). The fact that the operations of the Home were investigated for some time is not evidence of any affirmative act of non-enforcement.
 
 V
 
 27
 The Home Board and the Endowment Board constitute an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act. We therefore affirm the district court's ruling that the Act applies and the court's further order enjoining appellants from future noncompliance and restraining the withholding of compensation owed to the Home's employees.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The West Virginia Code provides statutory authority for the establishment of Odd Fellows homes. See W.Va.Code Sec. 35-3-1 (1985) ("It shall be lawful for the grand lodges of the ... Independent Order of Odd Fellows ... to acquire ... and hold the same for the purpose of establishing ... homes or asylums for the care and support of orphans and widows of deceased members, and of disabled and aged members of said organizations in indigent circumstances, respectively, such quantity of real estate within this State, as shall be necessary....") (emphasis added)
 
 
 [2]
 Indigent or aged members of Rebekah Lodges in West Virginia also may receive care at the Home
 
 
 [3]
 The seventh board member is from the Rebekah Assembly
 
 
 [4]
 This action was initially filed against only the Endowment Board. The Secretary later amended her complaint to add the Home Board as a defendant
 
 
 [5]
 See 28 U.S.C. Sec. 636(b)(1)(B); Fed.R.Civ.P. 72(b)
 
 
 [6]
 See 28 U.S.C. Sec. 636(b)(2); Fed.R.Civ.P. 53(b)
 
 
 [7]
 The statutory definition of "enterprise" was amended in 1989, effective April 1, 1990. See 29 U.S.C. Sec. 203(r)(1) (1990). The relevant provisions quoted in the text were not affected by the amendment
 
 
 [8]
 This provision is now contained in 29 U.S.C. Sec. 203(r)(2)(A) (1990)
 
 
 [9]
 As amended in 1989, the Act now provides that an enterprise engaged in the operation of an institution primarily engaged in the care of the sick or aged who reside on the premises of such institution is an enterprise engaged in commerce. 29 U.S.C. Sec. 203(s)(1)(B) (1990). The statute no longer explicitly requires that the employees of such an institution must have handled, sold, or otherwise worked on goods that had moved in interstate commerce