Peter J. **BRENNAN**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

**HARRISON COUNTY, MISSISSIPPI,** et al., Defendants-Appellees.

No. 73-3604.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1975.

902

Beverley R. Worrell, Regional Sol., Norman H. Winston, Associate Regional Sol., Leighton A. Beers, Jr., George D. Palmer, Attys., U. S. Dept. of Labor, Birmingham, Ala., William J. Kilberg, Sol., Donald S. Shire, Deputy Associate Sol., Carin Ann Clauss, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Boyce Holleman, Jim Rose, Gulfport, Miss., for defendants-appellees.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

This is a suit brought by the Secretary of Labor against the Board of Supervisors of Harrison County, Mississippi, (governing authority of that County) for injunctive relief and back pay for county employees who work at the Harrison County Home for the Poor. The Secretary contends that these employees are entitled to the minimum wages and overtime compensation prescribed by the Fair Labor Standards Act. The County denies coverage, a position sustained by the District Court.

We affirm.

The Harrison County Home is a home for paupers.

This activity is authorized by § 262 of the Mississippi Constitution of 1890, which provides as follows:

"The board of supervisors shall have power to provide homes or farms as asylums for those persons, who, by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of society; and the legislature shall enact suitable laws to prevent abuses by those having the care of such persons."

While this constitutional section mentions those who are old or infirm, it concludes with the all-inclusive category of those who are the victims of misfortune.

■ It is not open to doubt, under all the Mississippi decisions, that a county board of supervisors has no implied powers and can exercise only such authority as expressly set forth by statutes.

■ The Mississippi Legislature has prescribed the jurisdiction of county boards of supervisors in the matter of establishing and maintaining homes for the poor, as follows:

"Jurisdiction—county homes.

"The board of supervisors of each county shall have the jurisdiction and power necessary and proper for the relief and support of the poor of its county, and it shall have control of the county home, and may employ a suitable person to take charge of the same. It shall see that the poor are properly treated; and it may provide nurses and physicians in such cases as it may deem proper, and purchase medicines, and payment therefor may be ordered out of the proper fund by warrant on the county treasurer." Miss.Code, 1972, Section 43–31–1.

It will be noted that this statute alludes to "the relief and support of the poor", but further provides that they shall be properly treated, that nurses and physicians may be supplied in such cases as may be deemed proper, and that medicines may be purchased.

This legislative authority goes all the way back to Hutchinson's Mississippi Code of 1848, Chapter 14, Article 5(2), and has been brought forward in every Code in effect since that time. The language is the same in Section 7345 of the Mississippi Code of 1942, appearing in Chapter 4 thereof, under the general heading "Paupers". By Section 7345 of Chapter 4, for example, it is directed that the County shall provide decent burial for indigents dying within its borders even though they are not resi-

dents of the same. Section 7360 imposes the same duty upon incorporated municipalities.

All of the foregoing clearly demonstrates a fixed public policy with reference to county homes. They are solely for the succor of those who, by reason of their poverty, are unable to supply themselves with the ordinary necessities of life, such as food, clothing, and shelter, including medicine and medical attention when needed.

This Court knows, of course, as a matter of common knowledge, generally known even to the minimally informed citizen, that since the advent of various welfare programs fostered and maintained by the United States, the county poor house has almost disappeared from the scene. Very few counties find it necessary to maintain them any more, although Harrison County, a heavily populated county on the Mississippi Gulf Coast, has considered it advisable to do so. The disappearance of these facilities is no subject for regret because in the older days of a possibly more self-reliant people, the unavoidable necessity of seeking refuge at the county poor house was regarded not only as a crowning personal shame but the uttermost index to personal misfortune.

In any event, prior to 1966, the wages paid employees of the county home were of no concern to the Secretary of Labor; employees of state and local governments were exempt from the commands of the Wages and Hours law.

This case arises because Congress, in 1966, amended the Wages and Hours statutes to extend coverage to those "engaged in the operation of a hospital, [or] an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution", 29 U.S.C., § 203(s)(4).

The Secretary concedes that the Harrison County Home is not a hospital, mental or physical. From the record it is apparent that it is not a home for the sick (nursing home), operated as such for the purpose of rendering the services ordinarily expected and obtainable therein, with poverty as no indispensable prerequisite for admission.

A person applying for admission to the home because of age or illness would be rejected. The primary, indispensable requirement is that he must be an indigent; age or illness is incidental. Able bodied individuals are not accepted because they are deemed indigent by choice and, as a matter of public policy, not entitled to maintenance at the cost of those who earn a living and pay taxes.

The real consideration here is what Congress intended when it extended coverage to include hospitals and institutions "*primarily* engaged in the care of the sick, the aged, the mentally ill or defective" (emphasis added).

The Secretary argues that because nearly all of the inmates of the Harrison County Home are old or ill, or both, the coverage applies. If Congress had not seen fit to limit coverage to those "primarily engaged" we would perceive no reason to disagree.

The words "primary" or "primarily" have often prompted the definition of the Courts. There is nothing legally obscure about their meaning. As used in an Internal Revenue statute, the word "primarily" meant "of first importance" or "principally", Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). On another occasion the Supreme Court said that the word might also include "essentially" or "fundamentally", Board of Governors v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947). We shall not belabor this opinion by listing other cases which might be cited.

Obviously, the Harrison County Board of Supervisors had no authority, solely at the expense of public funds, to operate a hospital, a nursing home, a convalescent home, or a mental health facility for those who, without more, would like or "need" to reside permanently therein because of age or illness. The sole pri-

mary, essential, fundamental authority and purpose for this home was the care of the indigent. Indigency, not illness or age, was the indispensable prerequisite for the operation of the home. That the inmates were old or ill was an incidental, not a primary factor.

Thus, we are constrained to hold that the language of the statute may not be judicially stretched to include a public function, i. e. the operation of a poor house, which Congress did not see fit to mention.

This renders it unnecessary to reach, discuss, or decide other issues raised by the parties to this appeal.

The judgment of the District Court is Affirmed.