Terrance WAGNER

v.

SALVATION ARMY.

No. CIV-2-86-223.

United States District Court,
E.D. Tennessee,
Northeastern Division.

Nov. 17, 1986.

Charlton R. DeVault, Jr., Kingsport, Tenn., for plaintiff.

Robert L. Arrington, Moore, Stout, Waddell & Ledford, Kingsport, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This is an action brought pursuant to the Fair Labor Standards Act. 29 U.S.C. § 201 *et seq.* Plaintiff claims that he worked in excess of forty hours per week for defendant Salvation Army in Kingsport, Tennessee, but has never been paid overtime compensation. Defendant contends, on the other hand, that plaintiff is not entitled to overtime compensation because he was not employed by an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act (the Act). Defendant

moves for summary judgment. Rule 56(b), Federal Rules of Civil Procedure.

The Act requires that minimum wages and overtime compensation be paid to an employee who "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(b) and 207(b). Plaintiff, who worked primarily as a lodge keeper at a Salvation Army lodge for transients in Kingsport, Tennessee, does not claim that he was engaged in commerce or in the production of goods for commerce. He claims, however, that the Salvation Army is an "enterprise engaged in commerce or in the production of goods for commerce."

In *McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir.1972), the court held that the Salvation Army, although a religious organization, was an employer engaged in industry affecting commerce. Similarly, in *NLRB v. Salvation Army of Mass. Dorchester Day Care*, 763 F.2d 1 (1st Cir.1985), the court held that the Salvation Army is generally engaged in commerce and is, therefore, generally subject to the Act. Furthermore, in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), the Supreme Court held that a similar religious, non-profit organization was subject to the Act because the foundation's commercial businesses "serve the general public in competition with ordinary commercial enterprises." 471 U.S. at 299, 105 S.Ct. at 1961, 85 L.Ed.2d at 287. In fact, the defendant concedes that the Salvation Army as a whole is not exempt from the Act. (Defendant's reply memorandum, Court File No. 10). Accordingly, the Court finds that the Salvation Army is generally engaged in commerce and is, therefore, generally subject to the Act.

However, defendant argues that even if the Salvation Army is generally engaged in commerce, its branch organization, the Bristol Transient Lodge, is not. Since the lodge is a purely charitable, non-profit branch of the Salvation Army, defendant claims that the lodge and its employees are not covered by the Act. The lodge, according to defendant, does not engage in commerce but merely conducts eleemosynary activities, such as feeding, housing, and clothing transients. The organization does not charge money for these services, and no goods are sold on the premises.

While the Act does not specifically exclude the charitable activities of non-profit organizations, two opinion letters from the wage-hour administrator support defendant's position. These letters flatly state, "Enterprise coverage does not extend to the eleemosynary activities of a non-profit organization." Opinion letters No. 1040 (November 18, 1969) and 927 (May 29, 1968).

Of course, the Court is not bound by these agency opinions; but two cases, *Tony & Susan Alamo Foundations v. Secretary of Labor, supra,* and *Brennan v. Harrison County, Mississippi,* 505 F.2d 901 (5th Cir.1975), support the agency opinions. In *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), the Supreme Court upheld the eighth circuit's ruling[1] that the Alamo foundation was subject to the Act even though it was a non-profit, religious organization; but in doing so, the court measured the foundation activities against a commercial standard which would obviously exclude eleemosynary activities. The court found that the foundation was an "enterprise" within the meaning of the Act because the foundation's commercial businesses "serve the general public in competition with ordinary commercial enterprises," (471 U.S. at 299, 105 S.Ct. at 1961, 85 L.Ed.2d at 287).

"[T]he payment of substandard wages would undoubtedly give petitioners and similar organizations an advantage over their competitors. It is exactly this kind of 'unfair method of competition' that the Act was intended to prevent ..., and the admixture of religious motivations does not alter a business' effect on commerce." *Id.* (citations omitted).

---

1. *Donovan v. Tony & Susan Alamo Foundation,* 722 F.2d 397 (1983).

The eighth circuit's opinion is also instructive because it pointedly contrasts certain non-commercial activities with commercial activities covered by the Act. In discussing its rationale for finding the foundation to be a covered "enterprise", the court states:

It must be emphasized that these businesses serve the general public, in competition with other private entrepreneurs. The gas stations, for example, serve any motorist, and are not limited to fueling vehicles used for transportation of foundation associates or their travel in connection with their evangelical efforts. The grocery stores, clothing stores, and restaurants serve the public at large, not merely associates of the foundation. The foundation's motor trucks are not confined to private carriage of supplies for the foundation's own needs, but are common carriers holding out service to the public generally.... By entering the economic area and trafficking in the marketplace, the foundation has subjected itself to the standards Congress has prescribed for the benefit of employees. The requirements of the Fair Labor Standards Act apply to its laborers.

■ After examining the record in this case in light of the *Alamo Foundation* decisions, the Court finds that the transient lodge operated by the Salvation Army is not a commercial "enterprise" within the meaning of the Act. Unlike those commercial businesses described in *Alamo Foundation*, the transient lodge does not serve the general public and does not compete with other private entrepreneurs. The lodge serves only transients; and thus, by no means can it be said to have "entered the economic arena and trafficked in the marketplace." In summary, it simply does not engage in commercial activities.

Plaintiff argues that he drove a truck for the organization on some occasions. However, he does not contend that this was anything but sporadic duty. Nor does he contend that the truck driving was related to commercial activity, rather than a "private carriage of supplies for the foundation's own needs...." *Id.* Plaintiff also submits that the transients were required to perform chores in return for the lodge's services. However, this required labor was apparently confined to small housekeeping and gardening tasks, which were performed on the premises and could hardly be deemed "commercial." Certainly the lodge could not fairly be said to have entered the marketplace and to have engaged in competition with ordinary commercial enterprises simply because it requires its guests to make their own beds or to rake leaves.

Furthermore, in *Brennan v. Harrison County, Mississippi, supra,* the fifth circuit determined that a non-commercial, county home which provided eleemosynary services for the indigent was not covered by the Act. In that case, plaintiff argued that the home for indigents came under the purview of the Act due to a 1966 amendment which provides: "[A]ctivities performed by any person in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution" are covered by the Act. Because nearly all of the inmates at the Harrison County home were old or ill, plaintiff argued that the home was covered. Nevertheless, the fifth circuit found that, "The sole primary, essential, fundamental authority and purpose for this home was the care of the indigent. Indigency, not illness or age, was the indispensable prerequisite for the operation of the home." *Id.* at 903–904.

While plaintiff in this case does not argue that the lodge is covered by the 1966 amendment, *Harrison County* lends support to the agency's ruling that the Act does not cover the purely charitable activities of a non-profit organization, even if the organization as a whole is subject to the Act. Homes for "indigents" must be closely allied to homes for "transients"; and, in the absence of commercial activities it necessarily follows that a transient lodge receive exemption from the Act, as did the Harrison County home for indigents.

Accordingly, after careful consideration, the Court finds that plaintiff has failed to

raise a genuine issue of material fact as to whether the lodge is covered by the Act; that the transient lodge is not an "enterprise" within the meaning of the Fair Labor Standards Act because it does not engage in commercial activities; that plaintiff's employment is not covered by the Act; and that, therefore, defendant is entitled to summary judgment. Accordingly, defendant's motion for summary judgment is GRANTED; and it is ORDERED that this case be DISMISSED.