**Beverly L. MURRAY, Plaintiff,**

v.

**R.E.A.C.H. OF JACKSON COUNTY, INC., Defendant.**

**Civ. No. 2:93CV157.**

United States District Court,
W.D. North Carolina,
Bryson City Division.

Sept. 29, 1995.

---

**338**

Beverly L. Murray, Tampa, FL, pro se.

Randal Seago, Brown, Ward, Haynes, Griffin & Seago, Waynesville, NC, for defendant R.E.A.C.H. of Jackson County, Inc.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

THIS MATTER is before the Court on the Plaintiff's timely filed objections to the Memorandum and Recommendation of Chief United States Magistrate Judge J. Toliver Davis. Pursuant to 28 U.S.C. § 636 and standing orders of designation, this Court referred the Defendant's motion to dismiss to the Magistrate Judge for a recommendation as to disposition. For the reasons stated below, the recommended relief will be granted.

## I. STANDARD OF REVIEW

This Court reviews *de novo* those portions of the Memorandum and Recommendation to which objections have been filed. 28 U.S.C. § 636(b). The Plaintiff has objected to the finding that her position as manager qualifies as an executive or administrative position which is exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* (FLSA). However, this Court finds Defendant is not covered by the Act and dismisses the case on that ground.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff has sued R.E.A.C.H. of Jackson County, Inc. (Defendant) for violations of the FLSA claiming 150 hours of uncompensated overtime work from July 1991 until August 1992. According to Plaintiff's complaint, Defendant operated a "safe house" or shelter for the victims of domestic violence and abuse. Complaint, at ¶ 6. "Plaintiff was manager, responsible for upkeep of premises, client intake, client transportation, and counseling. . . ." *Id.* Plaintiff was paid an annual salary of $15,500 until April 1, 1992, at which time she received a raise to $18,000 per year. *Id.,* at ¶ 9.

In response to the complaint, Defendant filed a motion to dismiss alleging that it is not an enterprise engaged in commerce. Motion to Dismiss, at ¶ B. In support of this position, Defendant filed the affidavit of Nancy Ginnis, an elected member of the Board of Directors. Ms. Ginnis averred that Defendant is "a non-profit corporation organized to provide support services, counseling, education and emergency shelter to victims of domestic violence and sexual assault in Jackson County, North Carolina." Exhibit 1, Affidavit of Nancy K. Ginnis, filed February 24, 1995, *attached to* Defendant's Motion to Dismiss/Motion for Judgment on the Pleadings. Ms. Ginnis further stated that during the

time in question, Defendant did not engage in any profit-making business activity or commercial enterprise.

The Magistrate Judge converted the motion to dismiss to one for summary judgment and advised the Plaintiff of the requirements to respond to such a motion. Order filed March 7, 1995, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975). Plaintiff responded with the following arguments opposing Defendant's position: individuals receiving temporary shelter were physically or emotionally traumatized, often suffered from alcoholism; the shelter in fact operated as an institution for these individuals; thus, Defendant is an institution for the mentally ill. Plaintiff's Affidavit in Support of Claim, *attached to* Plaintiff's Response to Defendant's Motion to Dismiss, filed April 19, 1995. It appears from Plaintiff's proof that the center has only three employees and employs a psychologist on a weekly contract basis. *Id.,* Plaintiff's Stipulation of Fact, filed April 19, 1995.

### III. DISCUSSION

■ "Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that employees be paid time and a half for work over forty hours a week." *Shockley v. City of Newport News,* 997 F.2d 18, 21 (4th Cir.1993). Because the FLSA is remedial in nature, its terms of coverage are to be liberally construed while its exemptions are to be narrowly construed. *Masters v. Huntington,* 800 F.Supp. 363, 364 (S.D.W.Va.1992) (citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)). The burden of proving that an employee is exempt from coverage rests on the employer. *Id.,* (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974)).

However, the Act only applies to businesses which are an "[e]nterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s). An enterprise so engaged is defined to include a business

> engaged in the operation of a hospital, an institution *primarily* engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution....

29 U.S.C. § 203(s)(1)(B) (emphasis added). Based on this provision of the statute, Plaintiff argues Defendant is subject to the overtime requirements of the Act.

■ Despite the fact that the Supreme Court has repeatedly construed the Act liberally in order to "apply to the furthest reaches," it has declined to extend the Act to enterprises which are not truly engaged in public competition.

> Activities of eleemosynary, religious, or educational organization [sic] may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise.

*Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 297, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985) (quoting Labor Department regulation; other citations omitted). Thus, the Supreme Court has stated the test is one of economic reality with the focus being whether or not the enterprise is *primarily* engaged in competition in the public with ordinary commercial enterprises. *Id.; see also Williams v. Strickland,* 837 F.Supp. 1049 (N.D.Cal.1993). The test supports the Act's primary function because "the payment of substandard wages would undoubtedly give petitioners and similar organizations an advantage over their competitors. It is exactly this kind of 'unfair method of competition' that the Act was intended to prevent." Id.

■ It is undisputed that Defendant's function here is to provide temporary housing to the victims of domestic violence and sexual abuse. The goal of the shelter is to provide a safe haven during which counseling is provided to help these individuals "get back on their feet." To that end, the shelter has counselors who assist in finding permanent housing and a psychologist provides therapy on a contract basis. Plaintiff argues this converts the shelter into an enterprise

which "primarily engage[s] in the care of the ... mentally ill ... who reside on the premises of such institution...." 29 U.S.C. § 203(s)(1).

This Court cannot find the services provided here amount to being "primarily" engaged in the care of the mentally ill. The most important function of this facility is not to provide permanent housing for individuals who are there because they are mentally ill. *Brennan v. Harrison County*, 505 F.2d 901, 903 (5th Cir.1975). Indeed, it is offensive to consider the victims of domestic violence and sexual abuse to be mentally ill based solely on these accidents of life. The "indispensable prerequisite for the operation" of the shelter is the need for emergency sanctuary for these victims of domestic violence and sexual abuse. *Id.*, at 904. The fact that many, if not all, such victims may also suffer from severe emotional problems, alcoholism, or even true mental illness is merely incidental. *Id.* The shelter provides only temporary housing for people who literally have no other place to turn. *See also, Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 693 (4th Cir.1990) (recognizing that homes for the care of the indigent are not covered by the Act).

Plaintiff also alleges the employees of the shelter handle goods which have traveled in commerce, citing the distribution of donated food and clothing which she, as the manager, often picked up and delivered to the shelter. She also notes that she transported "residents" of the shelter to various locations, including at times taking them to new permanent residences in other states. Nonetheless, Plaintiff does not dispute that the shelter does not itself engage in the production of goods for commerce and does not compete in the public with ordinary commercial enterprises. The shelter "merely conducts eleemosynary activities, such as feeding, housing, and clothing [victims of domestic violence and sexual abuse]. The organization does not charge money for these services, and no goods are sold on the premises." *Wagner v. Salvation Army*, 660 F.Supp. 466, 467 (E.D.Tenn.1986) (applying the economic reality test of *Alamo* ). Opinion letters from the wage-hour administrator clarify that "[e]n-

terprise coverage does not extend to the eleemosynary activities of a non-profit organization." *Id.* And, there is no allegation that the handling of goods and transportation related to commercial activity; indeed, Plaintiff implicitly admits that such functions were necessary for the shelter's needs alone. *Id.* "The sole primary, essential, fundamental authority and purpose for this [shelter is] the care of the [victims of violence and abuse]." *Brennan, supra.*

Nor is this Court inclined to expand the scope of the Commerce Clause in view of the Supreme Court's recent pronouncement in *United States v. Lopez*, ___ U.S. ___, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Court there found a federal statute making the possession of a firearm in a school was unconstitutional because it unlawfully expanded the Commerce Clause. The Court noted the statute

is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Id.*, at ___, 115 S.Ct. at 1631. The operation of this shelter in one county in Western North Carolina does not arise out of and is not connected with a commercial transaction which substantially affects interstate commerce.

Therefore, the Court finds that the Defendant is not engaged in a business enterprise covered by the Fair Labor Standards Act. As a result, summary judgment must be granted for the Defendant as a matter of law.

In addition to filing objections, Plaintiff moved for partial summary judgment arguing that Defendant has failed to show any genuine issue of material fact by raising its affirmative defense of executive or administrative exemption. In view of the Court's holding, the motion is denied.

Plaintiff also filed a motion to strike the affidavit of Nancy Ginnis. That motion is

denied as moot in view of the Court's decision.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss or for judgment on the pleadings, converted to a motion for summary judgment, is hereby **ALLOWED;** and

**IT IS FURTHER ORDERED** that the Plaintiff's motion for partial summary judgment is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Plaintiff's motion to strike is hereby **DENIED** as moot.

A Judgment dismissing this matter will be filed herewith.

## *JUDGMENT*

For the reasons stated in the Memorandum and Order filed herewith,

IT IS, ORDERED, ADJUDGED AND DECREED that the Defendant's motion to dismiss, converted to a motion for summary judgment, is hereby ALLOWED, and this matter is hereby DISMISSED WITH PREJUDICE.